UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELIZABETH WARD,
   Plaintiff,

v.                                     C.A. No. 18-496-JJM-PAS

MICHAEL PETOW,
   Defendant.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Elizabeth Ward was arrested for disorderly conduct by Detective Corporal Michael Petow of the City of East Providence Police Department at a political event in February 2017. Ms. Ward now sues Det. Corporal Petow alleging violations of her constitutional rights under the Fourth Amendment and the First Amendment, assault and battery, and false arrest. ECF No. 1. Det. Corporal Petow moves for summary judgment on each count. ECF No. 14. Ms. Ward opposes Det. Corporal Petow's Motion for Summary Judgment on Counts I, II, and III. ECF No. 17.

For the reasons stated below, the Court DENIES Det. Corporal Petow's Motion for Summary Judgment on Counts I and III and GRANTS his Motion for Summary Judgment on Counts II and IV. ECF No. 14.

### I. BACKGROUND & FACTS

In February 2017, Ms. Ward was arrested for disorderly conduct at a political "town hall" event at the East Providence High School. ECF No. 14-2 at 1, ¶1. At the town hall, which the Rhode Island Congressional Delegation attended, Ms.

Ward protested the sanction of Senator Elizabeth Warren during the nomination hearings of Attorney General Jeff Session and challenged why each member of the Congressional Delegation attended President Trump's inauguration. *Id.* at ¶2. After the town hall ended, Ms. Ward walked to the exit of the auditorium holding a sign that read "Rage Against the Regime" and "Rule 19," the rule used to sanction Senator Warren. *Id.* at ¶3.

Before leaving the event, Ms. Ward placed her sign in front of a United States Congressperson so that another person could take a picture. *Id.* at ¶4; ECF No. 1 at 2, ¶8. The Congressperson's Chief of Staff instructed Ms. Ward to put down the sign. ECF No. 14-2 at 1, ¶¶5-6. Ms. Ward called the Chief of Staff an "asshole," shouted "fuck you" at him, and said "[d]on't wag your finger at me." *Id.*; ECF No. 1 at 2, ¶10. She was then told she had to leave. ECF No. 14-2 at 1, ¶7. Det. Corporal Petow held Ms. Ward's arm and, along with another police officer, escorted Ms. Ward to the exit. ECF No. 14-2 at 1, ¶7. As she was being escorted out, Ms. Ward tried to stop their progress and shouted: "Hands off. First amendment rights, I have the constitution in my pocket. Hear look." ECF No. 17-1 at 1, ¶3. Ms. Ward then turned toward Det. Corporal Petow and Det. Corporal Petow grabbed Ms. Ward's breast. ECF No. 17-1 at 1, ¶4.[1] Ms. Ward then shouted at him to "get [his] hand off [her] boob" and Det. Corporal Petow responded that Ms. Ward walked into

---

[1] An unrelated eventgoer recorded the incident and uploaded the video online, which is available at: https://youtu.be/n9hhfkWDUmU. ECF No. 14-2 at 1, ¶ 12. Ms. Ward alleges that the video shows that Det. Corporal Petow intentionally groped her breast. ECF No. 17-1 at 1, ¶4; ECF No. 17-3 at 1, ¶13. Det. Corporal Petow denies it. ECF No. 14-2 at 2, ¶11.

him. ECF No. 17-1 at 5, ¶¶5-6. Ms. Ward retorted, "that's male bullshit." *Id.* at ¶7. She was then arrested. *Id.* at ¶8. Ms. Ward claims that this was an intentional groping. ECF No. 17-1 at 1, ¶4; ECF No. 17-3 at 1, ¶13. But Det. Corporal Petow contends that he touched Ms. Ward's breast unintentionally as he was physically restraining and removing her from the event. ECF No. 14-2 at 2, ¶11.

Ms. Ward pleaded no contest to disorderly conduct. ECF No. 14-2 at 2, ¶¶14-15. She then sued Det. Corporal Petow, in his individual capacity, under 42 U.S.C §1983 for violating her Fourth Amendment rights (Count I) and her First Amendment rights (Count II), and, under Rhode Island law, for assault and battery (Count III) and false arrest (Count IV). ECF No. 1 at 3-5, ¶¶17-28.[2] Det. Corporal Petow moves for summary judgment on each count. ECF No. 14.

## II. STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could

---

[2] Ms. Ward did not sue the City of East Providence. *See* ECF No. 1.

3

resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[] to be resolved by a trier of fact." *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

## III. DISCUSSION

### A. Count I: Fourth Amendment Violation

In her complaint, Ms. Ward alleges that Det. Corporal Petow's actions violated her Fourth Amendment rights because he: (1) effected an unlawful seizure by arresting her through physical force; (2) used excessive and unreasonable force by "forcibly grabbing her breasts and repeatedly shaking it while arresting her;" and (3) arrested her without probable cause. ECF No. 1 at 3, ¶18.

Det. Corporal Petow argues that Ms. Ward's plea of no contest is fatal to her claims of unlawful seizure and arrest because it serves as a concession that he had probable cause to seize and arrest her. ECF No. 14-1 at 3-4 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Ms. Ward concedes this point and is now only pursuing her claim of excessive and unreasonable force. ECF No. 17 at 5.

In challenging Ms. Ward's claim of excessive and unreasonable force, Det. Corporal Petow has invoked the defense of qualified immunity. ECF No. 14-1 at 6-9. "Qualified immunity is the doctrine aimed at providing government officials (including police officers) a modicum of protection from civil damages liability for

4

actions taken under color of state law." *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). "This protection attaches 'to all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). If a government official's actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known," he may invoke the defense of qualified immunity. *Id.* (citing *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018)).

The Court analyzes qualified immunity using a three-part test to determine: (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and, if both these questions are answered in the affirmative, (3) whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *Jennings v. Jones*, 499 F.3d 2, 10–11 (1st Cir. 2007) (citing *Starlight Sugar v. Soto*, 253 F.3d 137, 141 (1st Cir. 2001)). Using this three-pronged inquiry, the Court will determine whether qualified immunity is appropriate for Det. Corporal Petow.

### 1. Prong One: The Constitutional Violation

The starting point for Ms. Ward's claim is whether a reasonable jury could find that Det. Corporal Petow violated Ms. Ward's Fourth Amendment rights through excessive force. *See Gray*, 917 F.3d at 8, 10. Because this is before the Court on summary judgment, the Court must view the evidence in the light most

favorable to Ms. Ward, the nonmovant. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

All seizures of a person, whether in the context of an arrest or investigatory detention, are governed by the Fourth Amendment protections against excessive force and are judged under a "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because claims of unreasonable force are analyzed "according to the constitutional touchstone of objective reasonableness," courts do not consider an officer's subjective "intent or motivation." *Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010). Instead, determining whether a particular use of force is reasonable requires consideration of the totality of the circumstances. *See Graham*, 490 U.S. at 396. This consideration requires the weighing of three non-exclusive factors: "[(i)] the severity of the crime at issue; [(ii)] whether the suspect pose[d] an immediate threat to the safety of the officers or others; and [(iii)] whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight." *Id.*

Drawing the inferences beneficially to Ms. Ward with respect to each *Graham* factor, the Court finds that Ms. Ward has presented enough evidence to make out a jury question whether Det. Corporal Petow used excessive force when he grabbed her breast. *See Gray*, 917 F.3d at 9. As for the first two *Graham* factors, the underlying crime, disorderly conduct, was relatively mild and there was a lack of any immediate threat to the safety of Det. Corporal Petow or others. Additionally, while Ms. Ward was resisting progress as she was being led out of the auditorium, she was not resisting arrest—as she was not under arrest when Det. Corporal

6

Petow grabbed her breast—nor was she trying to flee. ECF No. 17-1 at 1, ¶¶3-4. She instead was trying to remain at the event to continue to protest. *Id.* In defying Det. Corporal Petow's attempt to remove her, Ms. Ward's disorderly conduct worsened. But, while her conduct was criminal, whether it was reasonable for Det. Corporal Petow to restrain Ms. Ward for that conduct in a manner that resulted in him grabbing an "intimate part" of her body is questionable and should thus be determined by a trier of fact.[3] *See Gray*, 917 F.3d at 9 ("Seen through the prism of the totality of the circumstances, the evidence is subject to interpretation and can support plausible though inconsistent inferences").

### 2. Prong Two: Whether the Right Was Clearly Established

After determining that a jury could find that Det. Corporal Petow violated Ms. Ward's Fourth Amendment right, the Court must now determine whether the alleged right was clearly established at the time of the violation. *See Gray*, 917 F.3d at 9-10. Specifically, the Court must consider whether, given the circumstances at hand, Ms. Ward's right to be free from the degree of force that Det. Corporal Petow was alleged to have used—an unreasonable grabbing of her breast—was clearly established. The Court uses this test to determine whether a defendant had "fair warning that [his] conduct violated the plaintiff's constitutional rights." *Suboh v. Dist. Attorney's Office of Suffolk*, 298 F.3d 81, 93 (1st Cir. 2002). Det. Corporal Petow asserts that a constitutional right for a criminal defendant "to

---

[3] Under Rhode Island law, "intimate parts" include "the genital or anal areas, groin, inner thigh, or buttock of any person or the breast of a female." R.I. Gen. Laws § 11-37-1.

7

be free from a momentary touching of the breast in the context of a physical confrontation with an uncooperative arrestee" is not clearly established. ECF No. 14-1 at 9.

To show a right was "clearly established," a plaintiff generally must "identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). That authority need not arise on identical facts, but it "must be sufficiently analogous to make pellucid to an objectively reasonable officer the unlawfulness of his actions." *Gray*, 917 F.3d at 9–10 (citing *City of Escondido, Cal. v. Emmons*, ––– U.S. –––, 139 S. Ct. 500, 503, 202 L.Ed.2d 455 (2019)). But "[i]n circumstances in which a violation of rights is apparent, a plaintiff may thwart a qualified immunity defense simply by demonstrating that 'the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Gray*, 917 F.3d at 10 n.4 (citing *Emmons*, 139 S. Ct. at 504). The First Circuit has recognized that this prong of the qualified immunity test does not require case law to "be particularized to address the alleged violation." *Jennings*, 499 F.3d at 17 n.18. Instead, "once the right allegedly violated has been defined, the court must examine whether 'the unlawfulness of particular conduct will be apparent *ex ante* to reasonable public officials.'" *Id.* (citing *Brady v. Dill*, 187 F.3d 104 (1st Cir. 1999)). "Put another way, a constitutional right is clearly established when the

unlawfulness of an officer's conduct would be 'readily apparent to the officer, notwithstanding the lack of fact-specific case law.'" *Whitledge v. City of Dearborn*, No. 18-11444, 2019 WL 4189496, at *6 (E.D. Mich. Sept. 4, 2019) (citing *United States v. Morris*, 494 F. App'x 574, 579 (6th Cir. 2012)).

Ms. Ward has not identified a case in which a court ruled that materially similar conduct—an unreasonable grabbing of a female's breast by an officer during a detention or arrest—was an unconstitutional violation of the Fourth Amendment. *See* ECF No. 17 at 7. She has, however, cited several cases in which courts of appeal from different circuits have recognized sexual assault as a constitutional violation of a person's substantive due process right to bodily integrity. *Id.* at n.1 (citing *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415–16 (9th Cir.1992); *Harris v. City of Pagedale*, 821 F.2d 499, 508 (8th Cir.1987)). While this authority may be persuasive, the Court believes it is unnecessary to show that an unreasonable grabbing of a female's breast by an officer during a detention or arrest was "clearly established" as unlawful. The unlawfulness of that conduct "is sufficiently clear" even if existing precedent does not address similar circumstances because, although Det. Corporal Petow has not been convicted of a crime, his conduct—viewed in the light most favorable to Ms. Ward—resembles the crime of second-degree sexual assault under Rhode Island law.[4] *See* R.I. Gen. Laws § 11-37-4; *see also State v. Gomez*, 116 A.3d 216, 225 (R.I. 2015). Ms. Ward's right to be free from sexual

---

[4] Under Rhode Island law, "[a] person is guilty of a second-degree sexual assault if he or she engages in sexual contact with another person" and "[t]he accused uses force, element of surprise, or coercion." R.I. Gen. Laws § 11-37-4(2).

9

assault, during a detention or arrest, should be readily apparent to an officer, notwithstanding the lack of fact-specific case law. *See Kane v. Barger*, 902 F.3d 185, 195 n.53 (3d Cir. 2018) (citing *White v. Pauly*, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers.")).

### 3. Prong Three: Whether a Reasonable Officer Would Have Believed a Violation Occurred

The final test for qualified immunity is to determine "'whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law.'" *McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir. 2017) (citing *Alfano*, 847 F.3d at 76). "These inquiries are carried out with the understanding that qualified immunity is meant to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *McKenney*, 873 F.3d at 81 (citing *Pauly*, 137 S. Ct. at 551). The purpose of this requirement has been described as "prophylactic" in that "it affords 'some breathing room for a police officer even if he has made a mistake (albeit a reasonable one) about the lawfulness of his conduct.'" *Gray*, 917 F.3d at 10 (citing *Conlogue*, 906 F.3d at 155).

In Fourth Amendment excessive force cases, this third prong inquiry and the first prong inquiry "appear[] indistinguishable" because both concern the reasonableness of the officer's conduct. *Jennings*, 499 F.3d at 18. The "key distinction," however, "is that prong one deals with whether the officer's conduct *was* objectively unreasonable, whereas prong three deals with whether an

10

objectively reasonable officer would have *believed* the conduct was unreasonable." *Id.*

The Court recognizes that Det. Corporal Petow confronted a difficult situation in responding to Ms. Ward's disorderly conduct, which required him to act swiftly increasing the likelihood of making a mistake. But, as noted, the Court must consider the facts in the light most favorable to Ms. Ward. *See Tolan*, 572 U.S. at 651. In doing so, it is hard to believe that an officer in Det. Corporal Petow's situation would not have known that grabbing a female defendant's breast would violate the rule of law. With the undisputed evidence, however, the Court cannot decide what an objectively reasonable officer would have believed in Det. Corporal Petow's circumstances. A jury should thus make this determination. *See Jennings*, 499 F.3d at 19-20. Det. Corporal Petow is therefore not entitled to qualified immunity at this time and summary judgment is DENIED for Count I.

### B. Count II: First Amendment Violation

In Count II, Ms. Ward alleges that Det. Corporal Petow violated her First Amendment rights by placing her under arrest in retaliation for protected speech. ECF No. 1 at 4, ¶21. Det. Corporal Petow counters by arguing that the *Heck* bar applies to allegations of First Amendment retaliatory arrests and thus precludes Ms. Ward from succeeding with this claim. ECF No. 14-1 at 5 (citing *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1725, 204 L.Ed.2d 1 (2019)). While acknowledging that the *Heck* bar does apply to First Amendment retaliatory arrest claims, Ms. Ward asserts that the Supreme Court also recognizes a "narrow

11

qualification" that her claim falls into "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." ECF No. 17 at 3-4 (citing *Nieves*, 139 S. Ct. at 1727). According to Ms. Ward, she was arrested for her conduct only after she tried to reach into her pocket to provide Det. Corporal Petow with a copy of her constitution and after she complained that he grabbed her breast. ECF No. 17 at 4. Because he had not arrested her for disorderly conduct until she complained of her breast being grabbed, Ms. Ward argues that it was that protected speech that caused Det. Corporal Petow to arrest her. *Id.*

The Court agrees with Det. Corporal Petow that Ms. Ward's claim of retaliatory arrest for exercise of her First Amendment rights must fail as it is undisputed that there was probable cause to arrest her. As correctly noted by both parties, the Supreme Court held in *Nieves v. Bartlett* that the *Heck* bar applies equally to First Amendment retaliatory arrest claims and the presence of probable cause thus generally bars recovery. 139 S. Ct. at 1726-27. Ms. Ward's plea of no contest acknowledged that there was probable cause to arrest her.

As Ms. Ward points out, the Supreme Court did recognize a "narrow qualification for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727. But, to fit into this narrow qualification, a plaintiff must "present[] objective evidence that [she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. And "[b]ecause

this inquiry is objective, the statements and motivations of the particular arresting officer are 'irrelevant' at this stage." *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Ms. Ward has not presented any such "objective evidence," nor suggested that such evidence exists. Instead, she relies on the fact that she was not arrested until she complained of her breast being grabbed. ECF No. 17 at 4. That complaint, according to Ms. Ward, must have been the basis of the arrest and not her overall disorderly conduct. *See id.* Unfortunately for Ms. Ward, that is not the type of objective evidence suitable for the narrow qualification recognized in *Nieves* and thus summary judgment for Det. Corporal Petow is appropriate.

### C. Count III: Assault and Battery under Rhode Island Law

In Count III, Ms. Ward alleges that Det. Corporal Petow "assaulted and held and manipulated [her] breast . . . before and during her arrest," which caused her "great damage." ECF No. 1 at 4, ¶24. Det. Corporal Petow challenges this claim by noting that assault and battery under Rhode Island law cannot stand if the defendant is determined to have used reasonable force incident to the arrest. ECF No. 14-1 at 9-10.

"Where a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, [the Court's] determination of the reasonableness of the force used under § 1983 controls [its] determination of the reasonableness of the force used under the common law assault and battery claims." *Raiche*, 623 F.3d at 40. Additionally, if an officer is found to merit qualified immunity under federal law, the officer will also be granted qualified immunity for

the same claim under Rhode Island law. *See Hatch v. Town of Middletown*, 311 F.3d 83, 90 (1st Cir. 2002). As discussed, whether Det. Corporal Petow used reasonable force and whether he is entitled to qualified immunity depends on facts to be determined by a jury. Summary judgment on Count III therefore must be denied.

### D. Count IV: False Arrest under Rhode Island Law

In Count IV, Ms. Ward alleges false arrest under Rhode Island law by Det. Corporal Petow. ECF No. 1 at 4-5, ¶¶26-28. Under Rhode Island law, "when probable cause exists to arrest, a claim of false arrest must fail...." *Horton v. Portsmouth Police Dep't*, 22 A.3d 1115, 1123 (R.I. 2011). Both parties correctly acknowledge that Ms. Ward's plea of no contest serves as a concession that Det. Corporal Petow had probable cause to arrest her. ECF No. 14-1 at 4; ECF No. 17 at 9-10. Summary judgment in favor of Det. Corporal Petow is thus warranted.

## IV. CONCLUSION

For the reasons stated, the Court DENIES the Defendant's Motion for Summary Judgment on Counts I and III and GRANTS the Defendant's Motion for Summary Judgment on Counts II and IV. ECF No. 14.

IT IS SO ORDERED

_____
John J. McConnell, Jr.
Chief United States District Judge

April 21, 2020